IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ADEL GOUHAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. **3:20-cv-00904-JAG** |
| | ) |
| WAL-MART STORES EAST, L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT

Plaintiff, Adel Gouhar ("Mr. Gouhar" or "Plaintiff"), by counsel, hereby alleges the following causes of action:

## INTRODUCTION

1. Plaintiff brings a cause of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq.*, against Defendant, Wal-Mart Stores East, L.P., arising from the suspension and subsequent termination of Plaintiff's employment based on his national origin.

2. In addition, Plaintiff brings a cause of action under Title VII against Defendant for unlawful retaliation against Plaintiff for engaging in protected activity.

## PARTIES

3. Mr. Gouhar is a natural person and a citizen of the Commonwealth of Virginia, residing in the County of Henrico, Virginia.

4. Defendant, Wal-Mart Stores East, L.P. ("Wal-Mart" or "Defendant"), is a Delaware corporation with its principal office located in Bentonville, Arkansas. Wal-Mart has

1

store locations throughout the Commonwealth of Virginia, including the subject locations—store number 4191 in Richmond, Virginia and store number 2795 in Ashland, Virginia.

5. At all relevant times, Mr. Gouhar was an "employee" of Wal-Mart as defined by 42 U.S.C. § 2000e(f).

6. At all relevant times, Wal-Mart was and is an "employer" as defined by 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

7. On March 24, 2020, Mr. Gouhar timely filed a Charge of Discrimination against Wal-Mart with the Equal Employment Opportunity Commission ("EEOC") and, pursuant to a work sharing agreement, with the Virginia Division of Human Rights.

8. On August 26, 2020, the EEOC issued a Notice of Right to Sue, received by Mr. Gouhar on August 29, 2020.

9. Mr. Gouhar timely filed this action less than ninety (90) days after receipt of the Notice of Right to Sue.

10. This Court has subject matter jurisdiction pursuant to Title VII.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because causes of action arises under Title VII, a law of the United States.

12. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Mr. Gouhar's claims occurred in Richmond and Ashland, Virginia, which are territories included within those assigned to the Richmond Division of the Eastern District of Virginia.

**FACTUAL BACKGROUND**

13.     Mr. Gouhar is a fifty-seven-year-old Egyptian male.

14.     On or about August 14, 2002, Mr. Gouhar first began working for Wal-Mart at store number 2295, located at 7901 Brook Road, Richmond, Virginia 23227, as an overnight accounting associate.

15.     Wal-Mart eliminated Mr. Gouhar's position in 2010, and Mr. Gouhar then transferred to Wal-Mart store number 2795, located in Ashland, Virginia.

16.     Within four years at store number 2795, Mr. Gouhar was promoted from inventory associate to customer service manager on or about June 7, 2014.

17.     Mr. Gouhar's performance evaluation for the period of August 14, 2014 to August 14, 2015 showed his overall performance as "Exceeds Expectations."

18.     Mr. Gouhar's performance evaluation for the period of August 12, 2015 to May 9, 2016 showed him as "Above Standard" in all categories.

19.     In 2016, Mr. Gouhar sent a suggestion to his regional office (27-Virginia) for Wal-Mart to better market an item, and received back an undated handwritten note from Bob Davis, Regional General Manager, thanking him for his suggestion.

20.     When a job opening became available at a Wal-Mart near Mr. Gouhar's home in Richmond, Virginia, he transferred in late 2016 to Wal-Mart store number 4191, located in Richmond, Virginia, as a grocery support manager.

21.     On or about August 9, 2017, Mr. Gouhar graduated from Wal-Mart's Academy after successfully completing his training and was certified as a "Leveling."

22.     Later in August 2017, Wal-Mart awarded Mr. Gouhar a "Wal-Mart*15 years" certificate, thanking and congratulating Mr. Gouhar on reaching this "impressive milestone."

Greg Penner, Chairman of the Board of Directors of Wal-Mart, and Doug McMillion, President and CEO of Wal-Mart, signed the certificate.

23. Wal-Mart again eliminated Mr. Gouhar's position in 2018, and, after a short leave of absence, Mr. Gouhar returned to Wal-Mart store number 4191 as a cashier, the only position offered to Mr. Gouhar at that time.

24. During this time, Wal-Mart posted a customer service manager position twice at the store, however both times Wal-Mart rejected Mr. Gouhar's application.

25. While at Wal-Mart store number 4191, Mr. Gouhar excelled at his job and overall customer service.

26. In January and April 2019, Mr. Gouhar was the employee winner and awarded recognition for "delivering awesome customer service."

27. In May and June 2019, Mr. Gouhar received very high reviews from Wal-Mart customers on its CFF customer feedback program which was viewable companywide.

28. Despite Mr. Gouhar's exceptional job performance, positive customer service and satisfaction surveys, and numerous requests for a promotion, his Caucasian store manager at Wal-Mart store number 4191 refused to promote Mr. Gouhar to a customer service manager position three separate times.

29. On or about July 17, 2019, Mr. Gouhar sent a letter to Wal-Mart's regional office complaining, in part, about unethical actions of his store manager and the manager's refusal to consider him for a promotion to customer service manager despite his excellent work and customer service. Mr. Gouhar further requested a transfer back to Wal-Mart store number 2795 in hopes of "better opportunities over there," meaning fair, equal, and non-discriminatory treatment. Mr. Gouhar received no response from Wal-Mart.

30. On or about July 29, 2019, Mr. Gouhar transferred to Wal-Mart store number 2795 with a promotion to a customer service manager position.

31. While at work on August 30, 2019, Mr. Gouhar's co-worker and two customers advised Mr. Gouhar that a group of six young African American customers appeared to have skipped or not scanned some of their items at a nearby self-checkout station.

32. Upon receiving the information from his co-worker and the two customers, Mr. Gouhar attempted to contact by radio a representative from the store's loss prevention team but did not receive a response. Mr. Gouhar then attempted to contact a store management staff member, but again received no response.

33. By this time, the group of six customers were approaching the exit door where Mr. Gouhar was then stationed. Mr. Gouhar checked the customers' purchases and noticed that their receipt did not appear to match all the merchandise in their possession.

34. Mr. Gouhar, still without a response from risk management or store management staff, politely and with utmost respect asked the six customers to accompany him back to the self-checkout station to rescan their items. The rescanned items by the Plaintiff did not appear to match their receipt for the items originally scanned by the customers. There was no accusation of shoplifting, no detention for shoplifting, no safety or risk issues involved, and the six customers then left without any further incident or complaints. Mr. Gouhar's action was not based on the six customers' race.

35. Immediately prior to this interaction, Mr. Gouhar had checked the receipts of at least four other customers at the exit door.

36. While Mr. Gouhar was at the self-checkout station with the group of six customers, a female African-American customer nearby observed them and began to film the

interaction with her cell phone, yelled attention to them, and falsely accused Mr. Gouhar of racial "profiling" the group of customers because they were African American. She later posted this video on various social media platforms.

37. Mr. Gouhar thereafter finished his shift and left work for the day, and returned the next morning around 7 a.m.

38. At all relevant times, Mr. Gouhar was satisfactorily performing his job duties and otherwise meeting his employer's legitimate expectations.

39. In the meantime, Wal-Mart management became aware of the posted video involving Mr. Gouhar and the six customers. On August 31, 2019, at approximately 8:30 a.m., A.B. Hunter, asset protection officer, and A.J. Soltan, store manager, unexpectedly confronted Mr. Gouhar and placed him on unpaid leave pending an investigation into the video "incident." Other than the mention of the posted video, store management did not mention any misconduct or violation of company policy by Mr. Gouhar. Store management further removed Mr. Gouhar's work keys, work phone, and personal and earned Wal-Mart discount card prior to Mr. Gouhar's departure from the store.

40. At this time, store management told Mr. Gouhar that he would be contacted for an interview and would later be notified of the results of the investigation.

41. Wal-Mart never actually performed an investigation, and, if it did, Wal-Mart never contacted Mr. Gouhar for an interview. In fact, Wal-Mart never contacted Mr. Gouhar regarding an interview in this matter after August 31, 2020.

42. Prior to this incident, Mr. Gouhar had never received discipline from Wal-Mart.

43. After approximately one month without any contact from Wal-Mart, Mr. Gouhar, by counsel, contacted Wal-Mart's legal department by e-mail dated September 27, 2019 at 10:41

a.m., requesting a response on the matter of Mr. Gouhar's suspension, advising an EEOC claim would be filed if necessary, and requesting preservation of all evidence, including any store videos. Wal-Mart never responded.

44.   During this time, Mr. Gouhar filed for unemployment compensation with the Virginia Employment Commission (the "VEC") on or about September 22, 2019. Wal-Mart did not respond to the VEC's initial request for information and failed to provide the VEC with their reason for suspending Mr. Gouhar.

45.   The VEC issued its Notice of Deputy Determination on October 18, 2019, deeming Mr. Gouhar qualified for unemployment compensation, though he was not formally terminated.

46.   At this point, Wal-Mart still had not contacted Mr. Gouhar regarding his employment status.

47.   Mr. Gouhar later learned through the VEC proceedings that Wal-Mart, through its agent Equifax, created an "exit interview" document on November 5, 2019 and sent it to the VEC. The document indicated Mr. Gouhar's termination date was November 5, 2019, and the post hoc reason for termination provided was alleged "gross misconduct" for violating the AP-09 Policy for unauthorized associates. In addition, the document advised Mr. Gouhar is not eligible for rehire because of the alleged "gross misconduct."

48.   Wal-Mart's stated reason—i.e., "gross misconduct," for violating the AP-09 Policy for unauthorized associates—is false and otherwise entirely fabricated to try to defend Wal-Mart's discriminatory and retaliatory treatment of Mr. Gouhar through the suspension and eventual termination of Mr. Gouhar.

49. Upon information and belief, non-Egyptian employees, including those employees of Middle Eastern origin, of Wal-Mart did not receive this type of treatment or adverse employment action, including acts of retaliation, for similar behavior.

## STATEMENT OF CLAIMS

### COUNT I:

### DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
### IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-2(a)(1))

50. Plaintiff incorporates by reference and realleges each allegation set forth above.

51. Plaintiff is an Egyptian male, and otherwise considered to be of Middle Eastern origin, and a member of a protected class.

52. Wal-Mart discriminated against Plaintiff because of his national origin by suspending Plaintiff pending investigation and subsequently terminating Plaintiff's employment.

53. At relevant all times, Plaintiff was satisfactorily performing his job duties and otherwise meeting his employer's legitimate expectations.

54. Prior to the underlying incident, Plaintiff had never received discipline from Wal-Mart.

55. Wal-Mart never actually performed an investigation, and, if it did, Wal-Mart never contacted Plaintiff for an interview.

56. Only after Plaintiff sought redress from Wal-Mart's unlawful suspension did Wal-Mart present a post hoc, pretextual reason for its discipline of Plaintiff.

57. Upon information and belief, non-Egyptian employees, including those employees of Middle Eastern origin, of Wal-Mart did not receive this type of treatment or adverse employment action, including acts of retaliation, for similar behavior.

58.    Due to the actions of Wal-Mart, Plaintiff suffered lost wages and benefits; emotional distress; anxiety; stress; embarrassment; humiliation; pain; suffering; damage to his reputation; and loss of enjoyment of life.

## COUNT II

### RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-3(a))

59.    Plaintiff incorporates by reference and realleges each allegation set forth above.

60.    On or about July 17, 2019, Plaintiff sent a letter to Wal-Mart's regional office complaining, in part, about unethical actions of his Caucasian store manager, Jason, and the manager's refusal to consider him for a promotion to customer service manager despite his excellent work and customer service.

61.    Plaintiff further requested a transfer in hopes of "better opportunities over there," meaning fair, equal, and non-discriminatory treatment.

62.    On or about July 29, 2019, Plaintiff transferred to Wal-Mart store number 2795 with a promotion to a customer service manager position.

63.    Approximately one month later, Wal-Mart store management placed Plaintiff on unpaid leave pending an investigation into the video "incident."

64.    Wal-Mart never actually performed an investigation, and, if it did, Wal-Mart never contacted Plaintiff for an interview. In fact, Wal-Mart never contacted Plaintiff regarding this matter until after August 31, 2020.

65.    Prior to this incident, Plaintiff had never received discipline from Wal-Mart.

66.    At all relevant times, Plaintiff was satisfactorily performing his job duties and otherwise meeting his employer's legitimate expectations.

67. On September 27, 2019, Plaintiff, by counsel, requested a response from the Defendant on the matter of Plaintiff's suspension and advised legal action under the EEOC may be taken.

68. Further, Plaintiff filed for unemployment compensation with the VEC on or about September 22, 2019.

69. Not until well after the VEC issued its Notice of Deputy Determination on October 18, 2019, deeming Plaintiff qualified for unemployment compensation, did Wal-Mart terminate Plaintiff's employment on November 5, 2019.

70. Wal-Mart further provided a fabricated, pretextual reason for its actions; i.e., Wal-Mart terminated Plaintiff's employment for alleged "gross misconduct" for violating the AP-09 Policy for unauthorized associates.

71. Wal-Mart's stated reason—i.e., "gross misconduct," for violating the AP-09 Policy for unauthorized associates—is false and otherwise entirely fabricated to try to defend Wal-Mart's discriminatory and retaliatory treatment of Plaintiff through the suspension and eventual termination of Plaintiff.

72. Wal-Mart's actions were intentional and performed with malice and/or reckless indifference to Plaintiff's federally protected civil rights.

73. Due to the actions of Wal-Mart, Plaintiff suffered lost wages and benefits; emotional distress; anxiety; stress; embarrassment; humiliation; pain; suffering; damage to his reputation; and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Adel Gouhar, by counsel, respectfully requests that this Court:

A. Enter judgment in his favor and against Defendant, Wal-Mart Stores East, L.P.;

B. Declare the acts and practices complained of herein are in violation of Plaintiff's rights as secured by Title VII;

C. Enjoin Wal-Mart from engaging in such unlawful employment practices under Title VII;

D. Order such affirmative action as may be appropriate, including, but not limited to, hiring Plaintiff to a comparable position at Wal-Mart or to his former position or, in the alternative, awarding Plaintiff front pay;

E. Award all back pay and benefits, including salary increases, bonuses, vacation pay, and health insurance, with interest on same running from August 31, 2019 until the date a final judgment is entered for him;

F. Enjoin Wal-Mart to fully reinstate Plaintiff's Wal-Mart Discount Card;

G. Award Plaintiff money damages for all other compensatory damages, including, but not limited to, emotional and mental distress and injury to his good name and reputation, with pre-judgment interest on same running from August 31, 2019 until the date a final judgment is entered for him;

H. Award Plaintiff punitive damages;

I. Award Plaintiff reasonable attorneys' fees and costs;

J. Award Plaintiff a separate amount to offset the adverse tax effects of any lump sum payments of damages awarded herein;

K. Award Plaintiff pre- and post-judgment interest on any monetary award; and

L. Award all other such equitable and legal relief as the law allows to fully effectuate the purposes of Title VII.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

<mark>
<mark>
</mark>
</mark>
Respectfully submitted,

**ADEL GOUHAR**
*Plaintiff*

By: _____/s/_____
James B. Thorsen, Esq.
VSB No. 18113
Jesse A. Roche, Esq.
VSB No. 82579
Attorney for Plaintiff
ThorsenAllen LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com
E-mail: jroche@thorsenallen.com